## M. HARDIN *v.* THE STATE.

1. CHARGE OF THE COURT. — In construing a charge to the jury, regard is to be had to the connection and interdependence of its several clauses.

2. SAME ON CIRCUMSTANTIAL EVIDENCE. — It is only when the inculpatory evidence is exclusively circumstantial that a charge on that species of proof has been held an indispensable part of the law applicable to the case. The ordinary test of the sufficiency of evidence is its ability to satisfy the jury, beyond a reasonable doubt, of every fact necessary to constitute the guilt of the accused.

3. EVIDENCE. — Note a state of case in which, as proof of complicity in the theft of a horse, it was competent for the State to show facts tending to implicate the accused in a previous theft of merchandise perpetrated in a neighboring county.

APPEAL from the District Court of Williamson. Tried below before the Hon. A. S. WALKER, Special Judge.

The appellant and J. T. Hardin were charged by the indictment with the theft of a gelding belonging to J. T. Huggins, on April 16, 1876. At the July term, 1879, the appellant was separately tried, convicted, and allotted a term of six years in the penitentiary.

Dr. J. T. Huggins, for the State, testified that about nine or ten o'clock in the forenoon of the day alleged in the indictment he hitched his horse in the rear of his office, which was situated near the north-west corner of the public square in Georgetown. Half an hour afterwards, when he was at an establishment some fifty yards distant, he was informed by one Burrell Allen that his horse had been taken by somebody and ridden off. He immediately went and verified the information by finding his horse, saddle, and bridle gone. A month or six weeks afterwards he recovered the horse, but had never got his saddle or bridle. This witness's testimony proved only the fact of the theft, and contributed nothing to the identification of the thief.

Burrell Allen, for the State, testified that he happened to be passing along the north side of the square, when he ob-

served the appellant and another man come around the north-west corner together, and stop in front of where Dr. Huggins's horse was hitched, and engage in a conversation which witness did not understand. In a little while the appellant walked off to the front of the establishment where Dr. Huggins was at the time, and the other man went to the horse, mounted him, and rode off in a lope. This man was clothed in a dove-colored coat and blue pants. Witness went immediately and informed Dr. Huggins, and accompanied other persons in an endeavor to recover the horse. In a thicket across a creek they found a camp at which were two horses, a wallet and a pair of saddle-bags containing a shawl, some shirts, a hat, some shoes, and a dress-pattern.

J. J. Robertson, for the State, testified that the appellant and another man came into his saloon in Georgetown, the evening before Dr. Huggins's horse was stolen. They had a ragged one-dollar bill for which they wanted to get change or whiskey; but witness would not take it. Both the appellant and his companion had the bill, talked about it, and said they got it at Valley Mills in Bosque County. From their talk to and intercourse with each other, they seemed to be well acquainted. They came to the saloon together, and went away together. Appellant's companion wore blue pants, the lower extremities of which were of a deeper hue than the parts above them. He was larger than the appellant and looked older.

C. C. Bradford, for the State, saw the appellant and a companion associating together the same morning Dr. Huggins's horse was stolen, and also the evening previous. They came together to witness's saloon, and played billiards together. This witness gave a similar description to Robertson's of the clothing worn by the companion of the appellant.

J. L. Peay, for the State, testified that his attention was attracted by the crowd which gathered when the horse was

stolen. The appellant came up and asked why more men did not go after the thief, and witness asked him where he lived and when he came to town. He replied that he lived down the Gabriel, and had stayed the previous night at the Alamo Hotel in Georgetown. Witness kept the only other hotel in Georgetown; the appellant did not stay at it. The appellant said he did not know the man who had taken Dr. Huggins's horse, and had never seen him. Appellant started out of town towards Burnet, but did not keep the road. Witness followed him and told him it was desired that he would not leave until the matter about the theft of the horse was investigated. He returned to town with witness, and was then arrested.

J. W. Posey, for the State, testified that he saw the appellant and the man with the blue pants consorting together on several occasions during the day preceding the morning of the theft. Appellant stated that he had a camp across the creek, and the camp was found where he stated it was. Appellant and his companion bought some crackers at a store after dark on the evening preceding the theft; one of them remarked to the other, "Let's get some crackers and take to camp."

S. M. Strayhorn, sheriff of the county, testifying for the State, said that he was of the party who discovered the camp. At it they found blankets, shirts, pants, boots, shoes, and a silk dress-pattern; which articles were afterwards claimed and identified by Mr. Wilson. The appellant when arrested had on two pairs of pants, one of which was exactly like a pair found at the camp. Of the two horses which were also found there, he claimed one after he was arrested.

H. P. Casey, for the State, testified that he was a clerk for Wilson, in Coryell County, and about four days before the theft of the horse he missed some goods and some money, including a one-dollar bill so worn and ragged that it would not readily pass. Witness had never seen it

since, and did not know that he could distinguish it from other bills similarly damaged. Witness had never seen the appellant about Wilson's store.

A resident of Coryell County, testifying for the State, knew the defendant there in the same month that Wilson's store was robbed and Huggins's horse stolen, and about the same time defendant left Coryell County. Appellant's brother was there a few days before the appellant left.

H. F. Rosewood, for the State, testified that he kept the Alamo Hotel in Georgetown when the horse was stolen, and that the appellant did not stay at the hotel the night previous to that enterprise.

For the defence, Jim Cook testified that when the excitement got up about the theft of the horse, the appellant was sitting in witness's restaurant, and had been sitting there for an hour previous.

The opinion indicates the objections taken to some parts of the evidence for the State, and discloses all other matters of any significance.

*W. M. Key*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, and *W. B. Dunham*, for the State.

CLARK, J. The charge of the court is not obnoxious to criticism in the particular complained of by counsel for appellant. While the issue as to the ownership of the stolen animal might have been submitted in a different shape, yet, when the phrase " the same being the property of said Huggins " is taken and construed in connection with the entire paragraph, it is manifest to our minds that the ownership of the animal was not in fact determined by the court, and it is equally manifest that the jury could not have entertained an impression, from the charge, that the question of ownership was withdrawn from their consideration. The particular paragraph complained of was a con-

cise statement of all the elements entering into and constituting the offence of theft, so plainly and succinctly put that its phraseology could not well be improved.

The extent to which this or any other court has gone in prescribing a necessity for an instruction upon the law of circumstantial testimony is that, in cases dependent solely upon that species of evidence in order to connect the defendant with the offence committed, a jury should be instructed as to the nature and force of the conviction necessary to be impressed upon their minds before they are authorized to find against the prisoner. *Hunt* v. *The State*, 7 Texas Ct. App. 212. No particular words and phrases are essential in transmitting this idea to a jury, and the law is fully complied with if, from the charge as given, it appears that the substance of the requirement has gone to them in such manner that they could not mistake the duty imposed in the particular case. In this particular case the requirement is fully met by an instruction that " the law prescribes no rule for the kind or amount of testimony, other than that it must be sufficient to fully satisfy the jury of the existence of every fact necessary to constitute the guilt of the accused beyond a reasonable doubt." This is the exact test furnished by the law. *Brown* v. *The State*, 23 Texas, 200. In Hunt's case, *supra*, the court simply copied the statute as to the presumption of innocence and the reasonable doubt, and no explanation of the test was attempted; and this was held error, as the prosecution relied solely upon circumstances in evidence to identify the defendant with the transaction.

The evidence in this case is not wholly circumstantial, in a legal sense. The presence of the defendant at the scene of the theft, and his active confederation with the actual thief, were established by evidence of a positive nature. The rule as to circumstantial evidence has not yet been extended to a case of that character.

The evidence of the witness Casey as to the loss of

certain goods from the store of witness, in Coryell County, about April 12, 1876, only a few days before this offence was committed, was material for purposes of identification. It was shown by Weaver that the defendant lived in the immediate neighborhood of witness's store, notwithstanding he had told Peay, on the morning of the theft, that his name was Williams and that he lived on the Gabriel. The testimony of Strayhorn, the sheriff, shows that defendant had on two pairs of pants at the time of his capture, and that one of them was exactly similar to those found at the camp, and which camp was claimed as his. These pants at the camp, along with a variety of other articles, were identified and recovered by Wilson as his property taken from his store. This evidence tended to show the guilt of the defendant, by showing a guilty complicity with his companion, who was the actual thief, and who, it must be assumed from the evidence, came to the county of Williamson from the county of Coryell along with the defendant. It manifests most convincingly that the two were engaged jointly in a series of thefts, which included the one for which the defendant was upon trial, and tends more strongly than perhaps any other one fact to establish guilty knowledge and participancy in the actual theft upon trial. These facts constitute in themselves a chain of crimination, dependent for a basis, and as the main fact of the particular chain, upon the establishment of the loss of the property by Wilson in Coryell County. Without this, the other facts recited would have been without significance, if not wholly irrelevant.

No other errors are perceived in the rulings of the court upon the admissibility of testimony. The expression of the witness Robertson, in testifying to the companionship of the defendant upon trial and the actual thief, on the evening before the theft, that they "seemed to be well acquainted," was unimportant in view of the facts testified to by him and other witnesses that showed they were, in fact,

upon intimate terms. Even if the expression was important, as affecting the defendant, we are not sure that it was incompetent (*Richardson* v. *The State*, 7 Texas Ct. App. 486); and the claim of the defendant to one of the horses found at the camp could not, by any rule of law with which we are familiar, be tortured into an admission of guilt.

The sufficiency of the evidence needs neither discussion nor demonstration. The time and ownership were proved as laid, and the facts in evidence are most conclusive that appellant was a guilty participant in the theft, to the full extent of a principal, within the meaning of the law.

The judgment is affirmed.

*Affirmed.*